IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHERINE PAPPAS,      )
              )
     Plaintiff,     )
              )
  v.           )  No. 11 C 6239
              )
CAPTAIN DANTE ZORZI, OFFICER )
CARTER RICKEY, OFFICER M.   )
CHAVEZ and INVESTIGATOR BOLDA, )
individually, CALUMET CITY, and  )
ERIC BROWN,         )
              )
     Defendants.   )

# **OPINION AND ORDER**

Plaintiff Katherine Pappas, who is now an adult, alleges that she was sexually assaulted at her high school by another student, Eric Brown.[1] After

---

[1] Brown is presently confined awaiting trial on unrelated charges. Plaintiff has represented that she is not pursuing a state law assault and battery claim against Brown. The claim against Brown will be dismissed without prejudice. (Even if plaintiff were to pursue this claim, the supplemental party state law claim against Brown would be dismissed without prejudice since the only federal claim in the case is being dismissed on summary judgment.) Henceforth, the term "defendants" will be used to refer to the police officer defendants and, where applicable, the City of Calumet.

Calumet City police investigated the assault and provided a report to the Cook County State's Attorney, prosecutors declined pursuing charges against Brown. Subsequently, officers took plaintiff into custody on juvenile misdemeanor disorderly conduct charges based on falsely reporting that she had been sexually assaulted. Juvenile charges were brought, but were subsequently dismissed. Named as defendants are Calumet City Police Department employees Captain Dante Zorzi, Officer Carter Rickey,[2] Officer Marisa Chavez, and Investigator John Bolda. Against these defendants, plaintiff brings a federal claim of false arrest and a state law claim of malicious prosecution. A claim for indemnity is brought against Calumet City. Presently pending are plaintiff's motion for partial summary judgment as to liability on the false arrest claim and defendants' motion for summary judgment dismissing all claims against them.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. ***Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.***, 555 U.S. 271, 274 n.1 (2009); ***Malen v. MTD Prods., Inc.***, 628 F.3d 296, 303 (7th Cir. 2010); ***Stokes v. Bd. of Educ. of City of Chicago***,

---

[2] Rickey retired in October 2010.

599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. ***Ponsetti v. GE Pension Plan***, 614 F.3d 684, 691 (7th Cir. 2010); ***Outlaw v. Newkirk***, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986); ***Montgomery v. Am. Airlines, Inc.***, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. ***Celotex***, 477 U.S. at 324; ***Freundt v. Allied Tube & Conduit Corp.***, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); ***O'Brien v. Encotech Constr.***, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See* ***Lorillard Tobacco Co. v. A & E Oil, Inc.***, 503 F.3d 588, 594-95 (7th Cir. 2007); ***Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago***, 357 F.3d 677, 679 (7th Cir. 2004); ***Lampley v. Mitcheff***, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)).  The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548.  Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'"  *Logan*, 96 F.3d at 978.  "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute."  *Id.* (citation omitted).  In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted).  Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986).  Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'"  *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor for the purposes of considering defendants' motion, the facts assumed to be true for purposes of summary judgment are as follows.[3] Brown's assault of plaintiff occurred on May 4, 2009. To the extent it is material, on defendants' summary judgment motion it is taken as true that Brown assaulted plaintiff in the manner she described at her deposition. As is discussed below, a central issue for the false arrest claim is not whether plaintiff actually was sexually assaulted, but whether defendants had a sufficient basis to believe--even mistakenly--that plaintiff had engaged in an unforced sexual act with Brown. At the time, both were students at Thornton Fractional North High School in Calumet City, Illinois. Plaintiff was 15 years old and Brown was 16 years old. Brown

---

[3]Defendants object that plaintiff uses the same fact statement for both her own summary judgment motion and her statement of additional facts opposing defendants' motion. Defendants were not prejudiced. They were able to respond to this statement. To the extent plaintiff exceeded the number of paragraphs permitted by Local Rule, she is granted leave to file the additional paragraphs. To the extent any factual assertions are not adequately supported, they will not be credited.

offered to give plaintiff a necklace that he had found and told her it was hidden in the boys bathroom.  Plaintiff voluntarily entered the bathroom with Brown, but he then grabbed her by the hair and forced her into a toilet stall.  She screamed for help, but stopped when he threatened to kill her.  Brown forced plaintiff to engage in oral sex.  During the assault plaintiff vomited and Brown ejaculated on plaintiff's pants.  At the time, plaintiff did not know what ejaculate was, but her brother explained it to her after her first police interview.  The assault stopped when a female janitor came into the bathroom and asked who was in the stall.  Brown told the janitor that plaintiff was his sick sister who was in the bathroom vomiting.

The janitor brought plaintiff to the Dean's office.  Plaintiff spoke with the male Dean who eventually sent her to speak with a female Athletic Director (Terese McLaughlin).  After that, plaintiff went to the nurse's office.  Plaintiff did not tell any of the school employees that she had been forcibly sexually assaulted.  She told McLaughlin that she had vomited and that the white stain on her pants was vomit.  Plaintiff was crying at the nurse's office and continued crying into the evening at home.  The nurse provided a new pair of pants for plaintiff and gave her the stained capri pants in a bag.  Plaintiff threw the stained capri pants in a gym

locker. In different interviews with investigators, plaintiff said she threw the pants in a garbage can outside the Dean's office and in a garbage can outside the nurse's office. The pants were found in the gym locker by an investigator and had white stains on one leg.

Plaintiff later told her older brother she had been sexually assaulted and he took her to the police station around 5:48 p.m. Plaintiff spoke with Officer Louis Picicco, who is not a defendant. Plaintiff told Picicco that she went into the boys bathroom because she felt like she had to vomit and that she vomited in a toilet. While still in the stall, Brown approached and forced her to perform oral sex. She said she did not scream for help. When asked if Brown ejaculated, she said she did not know what that meant, but Picicco put in his report that she said Brown did not ejaculate.

Plaintiff reported that the female janitor came into the bathroom, Brown said "my sister is in here puking," Brown ran out of the bathroom, and the janitor escorted plaintiff to the Dean. She said that she spoke with the Dean and an Athletic Director, but did not report the assault to them.

The next day, May 5, defendants Chavez and Bolda began an investigation of the assault. They viewed videotape of the hallway outside the

bathroom. Later that day, Chavez interviewed plaintiff who provided information similar to what she had told Picicco. She stated that she did not know it was the boys bathroom. When asked why she did not scream for help, she said she was not the type to yell. Also, she said that she tried to tell the janitor what had happened, but the janitor "wasn't trying to hear" what she had to say. Chavez's report summary then states:

> I informed Katie that I viewed the video surveillance tapes from the school showing everything that happened in the hallway. Katie then stated she could not remember how she went into the bathroom. I asked Katie why she didn't vomit in the garbage can that was located right outside the boys bathroom. Katie stated she wasn't thinking and just decided to go into the stall. She then stated that she knew it was the boys bathroom. I asked Katie if she kissed Brown back, which she then stated that she did pucker her lips. I informed Katie that the video shows that two male students went into the bathroom separately on two different occasions during the time she and Brown were in the bathroom. I asked Katie why she didn't scream or yell, to which she stated that she was not aware anyone entered the bathroom.

The following day, May 6, Chavez interviewed Athletic Director McLaughlin who said she had a friendly relationship with plaintiff and that she thought plaintiff would feel comfortable talking to her about problems. McLaughlin reported that plaintiff told her she ran in the boys bathroom because

she had to vomit. McLaughlin specifically asked if anything else went on in there and if plaintiff had been hurt.

On May 6, Chavez also interviewed Brown. Brown reported that he and plaintiff were walking in the hallway and she asked if he wanted to go in the bathroom with her. He explained that students go into the bathrooms to do sexual acts. He said that, after the bell rang and the halls cleared, he put his arm around plaintiff and they went in the bathroom. He stated that plaintiff performed oral sex in a stall and that he ejaculated on her clothing. He stated that he ran out when the janitor paged the Dean.

The video surveillance showing plaintiff and Brown entering the bathroom was consistent with Brown's statement to Chavez, not plaintiff's statement to Chavez, Picicco, or school officials.

Late on the afternoon of May 6, assistant State's Attorney Grogan interviewed plaintiff. This time plaintiff said that she was talking to Brown outside the boys bathroom when she started feeling sick. She said Brown put his hands around her waist and she pushed him away and ran into the bathroom to vomit. This is inconsistent with what was shown on the videotape. She also told Grogan that she had thrown the soiled pants in a garbage can outside the nurse's office.

Shortly thereafter, however, Grogan found out the pants had been found in the gym locker. Grogan attempted to interview Brown, but he refused to answer questions on the advice of an attorney. Because of inconsistencies in plaintiff's statements, Grogan decided not to pursue charges against Brown.

During the investigation, school officials informed the investigators that other students at Thornton North had been caught engaging in sexual acts in the bathrooms.

Zorzi was concerned that, if a sexual assault occurred at a school committed by a Calumet City employee's son (Brown), it would be in the media and cause problems for Calumet City. After Grogan decided not to pursue charges against Brown, defendant Zorzi made the decision to detain plaintiff based on making false allegations. While still trying to convince plaintiff to retract her claim that she was sexually assaulted, Zorzi called plaintiff a "slut" and "whore" and asked her if she liked her experience with Brown. Plaintiff was detained and fingerprinted based on a juvenile petition alleging disorderly conduct by making a false report to the police.

On November 5, 2009, the State' Attorney charged plaintiff, in a petition to the juvenile court, with a disorderly conduct violation of 720 ILCS 5/26-1(a)(4)

based on filing a false police report. On April 14, 2011, the disorderly conduct petition was stricken with leave to reinstate after Brown declined to testify in the case.

Probable cause to arrest is a bar to federal and state false arrest claims, as well as malicious prosecutions claims brought pursuant to Illinois law. ***Mustafa v. City of Chicago***, 442 F.3d 544, 547 (7th Cir. 2006); ***Johnson v. Target Stores, Inc.***, 341 Ill. App. 3d 56, 791 N.E.2d 1206, 1219-20 (1st Dist. 2003). Probable cause is an objective standard based on the information known to the officer at the time of the arrest. ***Devenpeck v. Alford***, 543 U.S. 146, 153 (2004); ***Jackson v. Parker***, 627 F.3d 634, 638 (7th Cir. 2010); ***Carmichael v. Vill. of Palatine, Ill.***, 605 F.3d 451, 457 (7th Cir. 2010). "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." ***Devenpeck***, 543 U.S. at 153. "Probable cause requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true." ***Mucha v. Vill. of Oak Brook***, 650 F.3d 1053, 1056-57 (7th Cir. 2011). An arrest is not invalid because the arresting officer was maliciously motivated. ***Devenpeck***, 543 U.S. at 154; ***Mucha***, 650 F.3d at 1057. "Subjective intent of the arresting officer, however it is

determined (and of course subjective intent is always determined by objective means), is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Devenpeck*, 543 U.S. at 154-55. *See also Jackson*, 627 F.3d at 638; *Carmichael*, 605 F.3d at 457. "The law gives a police officer latitude to make reasonable judgments in light of the circumstances. While an officer may not close his or her eyes to clearly exculpatory facts, the Fourth Amendment does not require an officer with probable cause to arrest to wait while pursuing further investigation. In some situations, an officer may be required to conduct some investigation before making an arrest; in others, an officer may have probable cause for arrest without any need for investigation. Relevant factors include the information available to the officer, the gravity of the alleged crime, the danger of its imminent repetition, and the amount of time that has passed since the alleged crime." *Stokes*, 599 F.3d at 624-25. *See also Guzell v. Hiller*, 223 F.3d 518, 519-20 (7th Cir.2000). Additionally, the stated grounds for an arrest are immaterial because an arrest can be supported by probable cause that the arrestee committed any crime regardless of the arresting officer's belief as to what crime was committed. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 715 (7th Cir. 2013).

Plaintiff argues both in support of her motion for summary judgment and in response to defendants' motion that she could not be guilty of making a false report because she was a minor and, therefore, because of her age alone she was "unable to give knowing consent" to a sexual act (which Brown acknowledged) within the meaning of the Illinois Criminal Sexual Assault Act, 720 ILCS 5/11-1.20(a)(2). However, the Illinois Supreme Court has recently made clear that knowing consent as used in that statue is not determined solely by age. ***People v. Lloyd***, 2013 IL 113,510, 987 N.E. 2d 386, 392-96 (2013). Victims unable to give knowing consent are those who were mentally disabled, highly intoxicated, unconscious, or asleep. The court stated that the legislature did not intend that teenagers who willingly engaged in sexual acts be charged with Criminal Sexual Assault, a Class 1 Felony. ***Id.*** at 394-96. Accordingly, with certain exceptions not applicable, knowing consent is determined by facts in addition to age.

While the existence of malice would be pertinent to the malicious prosecution claim, any motivation that Zorzi (or any other defendant) may have had to establish Brown's innocence is irrelevant to whether there was probable cause to arrest plaintiff for committing a crime. The central question in this case is whether the information defendants had was sufficient to support probable cause

that plaintiff had committed any crime. Here that turns on the question of whether, based on the information known to defendants at the time of the arrest, there was a sufficient probability (not necessarily a likelihood) that plaintiff had engaged in unforced sexual activity. If plaintiff engaged in unforced sexual activity, then it was false to report to police that Brown forced her to perform oral sex. Plaintiff contends that is irrelevant because, even if sexual activity with Brown was unforced, Brown still committed a crime because it was also a crime for Brown to engage in unforced sexual activity with plaintiff. When a 15-year-old and 16-year-old both willingly engage in sexual conduct, both are guilty of misdemeanor sexual abuse. *See* 720 ILCS 5/12-15(b) (2009) (now codified as 720 ILCS 5/11-1.50(b)); ***In re T.W.***, 291 Ill. App. 3d 955, 685 N.E.2d 631, 635-36 (1st Dist. 1997). As regards false arrest, it is unnecessary to determine the finer points of the disorderly conduct false-reporting statute to determine whether, in 2009, it was clearly established that falsely reporting that a person engaged in forcible sexual abuse (a felony) would not violate the disorderly conduct statute if the person nevertheless had engaged in misdemeanor non-forcible sexual abuse of a minor. If plaintiff voluntarily engaged in unforced sexual activity with Brown, then she committed misdemeanor sexual abuse in violation of 720 ILCS 5/12-15(b)

and defendants had probable cause to arrest her even though that was not the stated basis for her arrest.

Again, no finding is being made by the court that plaintiff, an alleged victim of forcible sexual abuse, willingly engaged in unforced sexual activity with Brown. The question is whether defendants had information sufficient to support a probable cause determination that plaintiff engaged in unforced sexual activity and therefore a sufficient basis existed to arrest her for engaging in misdemeanor sexual abuse, if not false-reporting of disorderly conduct as well. A finding of probable cause only requires "a probability or substantial chance" that the conduct occurred, not sufficient evidence to support that the conduct was "more likely true than not true." *Mucha*, 650 F.3d at 1056-57.

As plaintiff points out, it is not necessarily unusual that a victim of a sexual assault would not initially report the assault, would provide inconsistent descriptions of the events, or would seek to cover up that she had been subjected to forcible sexual activity, or that the perpetrator would be an acquaintance. However, the facts and several inconsistencies known to defendants in this case were sufficient to support a substantial possibility that plaintiff had engaged in

unforced sexual activity with another minor and therefore had committed misdemeanor sexual abuse.

Here, plaintiff was discovered and confronted in the boys' bathroom at the moment of the events. She did not say when immediately questioned by four different school employees--the janitor, the Dean, the Athletic Director, and a nurse--that she had been subjected to forcible sexual activity. Even after she reported to the police that she had been subjected to forcible sexual conduct, and even after being told there was a video of her entering the bathroom, she continued to say that she ran into the boys' bathroom to vomit. (At a later time, her statement was that she had voluntarily agreed to go into the bathroom to receive a necklace, but that statement was not made until her deposition, well after the decision was made to arrest her.) Plaintiff's action discarding the stained pants in a locker was inconsistent with two different statements to investigators. Before the pants were discovered in a locker, she inconsistently stated that they had been thrown in two different garbage cans. That plaintiff provided two different explanations of what she did is further information known to defendants and supporting that plaintiff lacked credibility.

Brown's statement that he engaged in unforced sexual activity and a video showing plaintiff's apparently voluntary entry into the bathroom, a place students sometimes used for sexual activity, support the conclusion that plaintiff engaged in unforced sexual activity. Also, Brown's description was consistent with plaintiff's pants being stained whereas plaintiff had told Picicco that Brown had not ejaculated. Although plaintiff testified that her response to Picicco was that she did not know what ejaculate was, that is not what Picicco put in his report. (Picicco is not a defendant, but defendants were aware of Picicco's report.)

Based on the information known to them, defendants had probable cause to arrest plaintiff for committing misdemeanor sexual abuse with 16-year-old Brown. The false arrest claim will be dismissed.

Having resolved the only federal claim, the state law malicious prosecution claim would ordinarily be dismissed without prejudice for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3). **Omnicare, Inc. v. UnitedHealth Group, Inc.**, 594 F. Supp. 2d 945, 975 (N.D. Ill. 2009), *aff'd*, 629 F.3d 697, 721 (7th Cir. 2011). However, if the facts relevant to the malicious prosecution claim are closely related to the false arrest claim and already before the court, and the claim can be fully resolved on summary judgment without having to

address any difficult issues of state law, summary judgment as to the malicious prosecution claim should be addressed. *See id.*; ***Sellars v. City of Gary***, 453 F.3d 848, 852 (7th Cir. 2006); ***Brazinski v. Amoco Petroleum Additives Co.***, 6 F.3d 1176, 1182 (7th Cir. 1993). This is not such a case.

The well-settled elements of a malicious prosecution claim are: "(1) commencement of criminal proceedings by the defendants; (2) termination of that matter in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages." ***Williams v. City of Chicago***, 733 F.3d 749, 759 (7th Cir. 2013). While it was held that probable cause existed for the arrest, that was based on probable cause to arrest for engaging in sexual abuse with a 16-year-old. It was not determined whether probable cause existed for the false-report disorderly conduct that was prosecuted. Illinois law is not clear that falsely reporting that sexual abuse was forcible is disorderly conduct when the reported incident still violated the sexual abuse statute because the participants were both teenagers under 17. The other two elements that defendants focus on in their reply are that the dismissal was not indicative of innocence and malice is not shown. As to the latter, there is some evidence that Zorzi may have been motivated by issues other than plaintiff's guilt or innocence.

As to the former, Illinois law is not clear as to which dismissals with leave to reinstate are indicative of innocence.

Jurisdiction over the malicious prosecution claim, and that portion of the related indemnity claim against the City of Calumet, will not be retained. All the state law claims, including the claim against Brown, are being dismissed without prejudice.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [68] is granted in part and denied in part. Plaintiff's motion for summary judgment [61] is denied. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiff dismissing plaintiff's federal cause of action with prejudice and the state law cause of action without prejudice for lack of subject matter jurisdiction.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 3, 2013